IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUDITH ANN GAMBLIN,

                    Plaintiff,

v.                                                            No. 1:12-CV-1003 CG

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Reverse and
Remand for Rehearing, with Supporting Memorandum* ("Motion"), filed on April 8, 2013,
(Doc. 15), *Defendant's Response to Plaintiff's Motion to Reverse and Remand*
("Response"), filed on June 6, 2013, (Doc. 16), and *Reply to Defendant's Response to
Plaintiff's Motion to Reverse and Remand* ("Reply"), filed on June 24, 2013, (Doc. 17).

On or around June 1, 2009 Judith A. Gamblin filed applications for disability
insurance benefits and supplemental security income alleging disability beginning
January 1, 2008. (Administrative Record ("AR") at 92-103, 114-23). Her application was
denied on July 17, 2009, (AR at 41-43), and also upon reconsideration on March 9,
2010, (AR at 44-45). Ms. Gamblin filed her request for a hearing on March 30, 2010, (AR
at 59); the hearing occurred on March 1, 2011 before Administrative Law Judge ("ALJ")
Ann Farris. (AR at 24-40). Ms. Gamblin, appearing *pro se*, was the only person that
testified at the hearing. (AR at 13). The ALJ issued her opinion on March 25, 2011,
determining that Ms. Gamblin was able to do her past relevant work as a tourist

information clerk, and therefore not disabled under 20 C.F.R. §§ 423(d)(1)(A) and 1382c(a)(3)(A). (AR at 13-19). Ms. Gamblin filed an application for review by the Appeals Council, which was summarily denied, (AR at 1-5), making the decision of ALJ Farris the final decision of the Commissioner of Social Security (the "Commissioner") for purposes of this appeal.

Ms. Gamblin complains that ALJ Farris committed reversible, legal error by: (1) failing to develop the record regarding Ms. Gamblin's impairments; (2) incorrectly making a residual functional capacity finding unsupported by the evidence; and (3) failing to engage in the proper past relevant work analysis. (Doc. 15 at 8).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Administrative Law Judge did not adequately determine the requirements of Ms. Gamblin's past relevant work, pursuant to 42 U.S.C. § 405(g) (sentence four), the Court orders that the Motion be **GRANTED** and the case be **REMANDED** for further proceedings.

## I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d

1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

3

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity;" that (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. The fourth step is further broken down into three phases known as the "Winfrey analysis." *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). At phase one the ALJ must evaluate a claimant's physical and mental residual functional capacity ("RFC"). *See* SSR 86- 8, 1986 SSR LEXIS 15, at *18 (1986). At phase two, the ALJ must determine the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(e). At phase three, the ALJ will decide whether the claimant has the ability to meet the job demands found in phase two, in light of "the mental and/or physical limitations found in phase one." *Winfrey*, 92 F.3d at 1023 (citing *Henrie v. U. S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) and SSR 82-62, 1982 SSR LEXIS 27 (1982)). If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of

---

[1]  20 C.F.R. pt. 404, subpt. P, app. 1.

proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering her residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

III.    **Background**

Ms. Gamblin initially applied for disability benefits alleging debilitating scoliosis, rotoscolisis, sciatica, hypertension, and post-traumatic stress disorder ("PTSD"). (AR at 118). At the hearing, Ms. Gamblin testified that those impairments prevent her from standing, walking, and sitting for extended periods of time, (AR at 31, 35, 39), and that lifting and carrying objects induces back pain. (AR at 38-39). Ms. Gamblin provided her medical records from January 1, 2000 through April 11, 2011, earnings records, work history report, disability application, hearing testimony, and non-examining state agency evaluations to the ALJ to help her evaluate Ms. Gamblin's claim of disability.

A.  **Medical records**

The medical records indicate that Ms. Gamblin has primarily sought treatment for her alleged impairments at or through the New Mexico VA Health Care System. Ms. Gamblin's first relevant diagnoses occurred on November 1, 2000 when her physician found her to be afflicted with obesity and Adjustment Disorder with Mixed Anxiety and Depressed Mood. (AR at 432). She has maintained the obesity diagnosis since then. (AR at 315, 447, 468, 481). She sought treatment for her mood disorder through individual, cognitive therapy from 2000–01, (AR at 341-55), but tested negative for depression on November 4, 2010. (AR at 469). Ms. Gamblin's next relevant diagnosis came on April 1, 2009, when Dr. Carl F. Kupferer, M.D. diagnosed chronic low back

pain.[2]  (AR at 430). Dr. Kupferer's notes say that, despite her pain, Ms. Gamblin was satisfied with pain control through over-the-counter pain medications and could regularly engage in yoga and stretching exercises. (AR at 245-47). X-rays of her spine and hips take in April and June 2009 revealed rotoscoliosis of the lumbar spine with degenerative changes, and thoracolumbar scoliosis and moderate dextrorotoscoliosis with associated degenerative changes, as well as degenerative disc and joint disease. (AR at 241, 292, 294). Dr. Kupferer referred Ms. Gamblin to John Gelhot, D.C., a chiropractor, and Margaret Hansen, a physical therapist. (AR at 235 ). Dr. Gelhot saw Ms. Gamblin on July 2, 2009. His notes reflect that she complained of difficulty gardening, carrying approximately fifteen pounds or more, and sitting due to her low back pain. (AR at 380-81). She also told him that she had right knee pain, which she ascribed to a fall that happened in December 2008. (AR at 380-81). Dr. Gelhot determined Ms. Gamblin had muscle spasms in several cervical and lumbar spine areas, as well as the trapezius muscles, decreased range of motion in the cervical and lumbar spine, and pain to the touch over the spine. (AR at 334). Dr. Gelhot wrote that Ms. Gamblin was getting regular exercise by walking. Ms. Gamblin reported improvement to Dr. Gelhot in August 2009, but still had a limited range of motion, muscle spasms, and knee pain. (AR at 324-26).

Dr. David P. Green, a non-examining state agency physician, completed a Physical Residual Functional Capacity Assessment of Ms. Gamblin on July 15, 2009. Dr. Scott R. Walker, M.D., a non-examining state agency psychiatrist, completed a Psychiatric Review on July 16, 2009. (AR at 274-87). They based their conclusions on all of the evidence in Ms. Gamblin's claim file at that time. (AR at 266, 274). Dr. Green determined that Ms.

---

[2]  Ms. Gamblin had previously sought treatment for low back pain from Chiropractor Mark Schwartz, D.C. on January 31, 2008. (AR at 214- 22).

Gamblin could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk for a total of 6 hours in an 8-hour workday, and sit for a total of 6 hours in an 8-hour workday. (AR at 267). He also determined that she could climb a ramp or stairs, balance, stoop, kneel, and crouch frequently (between one-third and two-thirds of the time), and occasionally climb a ladder/rope/scaffolds or crawl (between never and one-third of the time). (AR at 268). Dr. Walker concluded she had no functional limitations "from a mental perspective" except mild limitations associated with maintaining social functioning. (AR at 284, 286).

In November 2009, Dr. Elizabeth Toman, M.D. became Ms. Gamblin's primary care physician. (AR at 320-21). On November 12, 2009 Ms. Gamblin complained of her low back pain to Dr. Toman, and also reported that she was getting regular exercise by walking daily. (AR at 316-19). She expressed dissatisfaction over what she perceived to be minimal benefits from her chiropractic treatment. (AR at 317). She met with Physical Therapist Margeret Hansen in January 2010, who observed that Ms. Gamblin was afflicted with lumbar lordosis, mild scoliosis, a limited range of motion in her hips, and right knee pain. (AR at 304). Ms. Gamblin told the physical therapist that her daily exercise routine at that time included stretching, yoga, hand weights, sit ups, and walking for about ten minutes. (AR at 481). Even though a physical therapy treatment plan was designed for Ms. Gamblin, she declined to continue with treatment after only two visits. (AR at 306). On November 4, 2010 Ms. Gamblin saw Dr. Toman, and again complained of chronic low back pain, exacerbated by lifting objects or standing or sitting longer than 10 or 15 minutes. (AR at 468-69). Ms. Gamblin requested a psychological evaluation for PTSD to help support her pending disability claim. (AR at 469). Later that month, Ms.

Gamblin was evaluated by Psychologist Dr. Aaron Joyce, Ph.D., who declined to diagnose PTSD.[3]  (AR at 450-53). Another series of x-rays was taken on November 29, 2010, which revealed Ms. Gamblin to be afflicted with mild to moderate degenerative changes with mild intervertebral disc space narrowing, multilevel osteophyte formation, and moderate facet degenerative change, similar to the x-rays from April 2009. (AR at 435). On December 7, 2010 she sought an initial weight-loss consultation with Registered Dietitian Elaine Reyes, M.S., R.D., C.D.E., and again reported her regular exercise program as walking. (AR at 447).

### B.  Past Relevant Work

Ms. Gamblin provided information about her past relevant work to the Commissioner in a "Work History Report- Form SSA-3369" and through testimony at her hearing. She reported on the Work History Report form that her past relevant work includes: plant maintenance technician (October 2006–December 2007); plant designer (1993–2003); magazine stocker (May 1999–January 2002); and plant designer (February–May 1999). (AR at 133). Ms. Gamblin also held a position she identified as "[T]ourist [C]ounselor I" from September 1995 through July 1998. (AR at 137-38). She described that job as: "give info, directions & suggestions to tourists visiting [New Mexico] and truck drivers- etc." (AR at 137). She wrote that she did the job eight hours per day, and that during each work day she walked for two hours, stood for five hours, sat for six hours, stooped for two hours, and kneeled for two hours to "clean floors." (AR at 137). Ms. Gamblin did not complete the section requesting information about the crouching, crawling, lifting, carrying, and weight demands of that job. At the hearing, ALJ

---

[3]  The record indicates she scheduled a second PTSD consult with a different psychologist for February 15, 2011 but those treatment notes are not in the record. (AR at 445).

Farris solicited information about what the tourist counselor job involved.

> FARRIS:  And what were you doing for the tourism department?
>
> GAMBLIN:  I was a tourist counselor.
>
> FARRIS:  And what did that involve?
>
> GAMBLIN:  Giving information out to guests that are going to Santa Fe. Truck drivers coming through for directions and business men getting directions for Santa Fe. Doing things around the center, stocking brochures, ordering brochures, doing counts of the people that came in daily.

(AR at 30). There is no other information in the record about the mental or physical demands of "tourist information clerk" or "tourist counselor" as actually or generally performed.

### C.  The ALJ Decision

At step one, ALJ Farris determined Ms. Gamblin met the insured status requirement through March 31, 2008, and that she had not engaged in substantial gainful activity since her alleged onset date of disability. (AR at 15). At step two, the ALJ found sufficient medical evidence and clinical findings to conclude Ms. Gamblin is severely impaired with lumbar scoliosis and obesity. (AR at 15). At step three, the ALJ determined that none of Ms. Gamblin's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. (AR at 17).

The ALJ proceeded to step four, and undertook the *Winfrey* analysis. At phase one, the ALJ made residual functional capacity findings that Ms. Gamblin could perform a limited range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), as long as that light work does not require sitting for more than one hour at a time, and only

9

requires occasional stooping. (AR at 17). In making the RFC finding, the ALJ recognized that Ms. Gamblin testified to experiencing chronic low back pain, depression and anxiety, and being unable to lift and carry a maximum of 10 pounds at a time or walk for more than 10 minutes at a time. (AR at 18). The ALJ acknowledged that Ms. Gamblin's statements concerning the intensity, persistence and limiting effects of her symptoms were not consistent with the ALJ's RFC determination. The ALJ explained that Ms. Gamblin's purported symptoms could not be substantiated by any of the objective medical evidence in the record, since the x-ray studies of Ms. Gamblin's spine and hips did not reveal any acute findings or severe degenerative changes, and that Ms. Gamblin stated on several occasions that she could control her back pain with medications. (AR at 18) (citing AR at 209, 245). ALJ Farris also recited some of Ms. Gamblin's daily activities, including doing household chores, cooking, driving, and shopping. (AR at 16). The ALJ remarked that no treating or examining physician had made a finding or offered the opinion that Ms. Gamblin is disabled, (AR at 19), or placed any limitations on Ms. Gamblin's ability to walk, stand, sit or lift, (AR at 18). Therefore the ALJ chose to grant significant weight to the RFC assessments of the non-examining state agency physicians (which placed no significant limitations on Ms. Gamblin's functioning). (AR at 19).

At phase two of step four, ALJ Farris concluded Ms. Gamblin's "past relevant work as a tourist information clerk can be performed in either the seated or the standing positions and allows [Ms. Gamblin] to sit and stand at will." (AR at 19). She did not identify any evidence in the record to support that finding. At phase three, she conducted a comparison of Ms. Gamblin's RFC with the physical and mental demands of tourist

information clerk, and concluded that Ms. Gamblin "is able to perform it as actually and generally performed." (AR at 19). ALJ Farris concluded the inquiry and declared Ms. Gamblin to be not disabled.

Mr. Bishop submitted additional evidence to the Appeals Council, consisting of a "Representative Brief" written by John Bishop, (AR at 210-11), and Radiology Reports dated November 16, 2000 and April 11, 2011, (AR at 483-87). That evidence was incorporated into the record and considered by the Appeals Council, but did not provide a basis for changing the ALJ's decision. This Court must consider the entire record, including the additional evidence, in conducting the substantial evidence review. *Martinez v. Barnhart*, 444 F.3d 1201, 1208, 164 Fed. Appx. 725 (10th Cir. 2006).

### D.  Points of Error

In her Motion, Ms. Gamblin alleges ALJ Farris committed several reversible errors. First, Ms. Gamblin contends that ALJ Farris did not adequately develop the record before beginning the *Winfrey* analysis. Next, she claims ALJ Farris's RFC analysis was flawed because ALJ Farris did not conduct an analysis of her ability to stand or walk, or discuss all of Ms. Gamblin's limitations resulting from her pain and obesity. Last, she complains that ALJ Farris failed to properly assess the physical and mental demands required by Ms. Gamblin's work as a tourist information clerk.

### IV.    Analysis

As stated above, step four of the sequential evaluation involves the application of the three-part *Winfrey* analysis. *See Winfrey*, 92 F.3d at 1023. At phase one, the ALJ evaluates a claimant's physical and mental RFC; at phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work; and at phase three,

11

the ALJ decides whether the claimant has the ability to meet the job demands found in phase two, in light of the mental and/or physical limitations found in phase one. *Id.* "At each of these phases, the ALJ must make specific findings." *Id.* The claimant still bears the ultimate burden of proof that she is disabled up through step four of the evaluation process. *Henrie*, 13 F.3d at 361. Ms. Gamblin alleges ALJ Farris failed to adequately develop the record before making the RFC determination and committed reversible error at phases one and two of the *Winfrey* analysis.

### A.  The record was adequately developed to make the RFC determination

Ms. Gamblin alleges that Defendant committed reversible error by failing to develop an adequate record relevant to her severe impairments of lumbar scoliosis and obesity. (Doc. 15 at 9-11). Specifically, Ms. Gamblin argues the ALJ's duty to further develop the record was triggered since minimal objective findings proving her alleged disability exist. (Doc. 15 at 10). Ms. Gamblin claims that ALJ Farris could have only satisfied this duty by either requesting an additional RFC assessment from a treating physician or independent examiner, or ordering a consultative examination. (Doc. 15 at 10).

It is the disability claimant's overall burden to provide evidence of her alleged disability. *Salas v. Califano*, 612 F.2d 480, 483 (10th Cir. 1979); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Administrative Law Judge "has a basic duty of inquiry to fully and fairly develop the record as to material issues." *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993). An ALJ's duty to develop the record is "heightened" when, as is the case here, a claimant appears *pro se* at the hearing. *See Henrie*, 13 F.3d at 361; *Salas*, 612 F.2d at 483. However, there is no duty to further

12

develop the record where sufficient information exists for the ALJ to make her determination as to disability. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008); 20 C.F.R. § 404.1512(e). The duty "is not a panacea for claimants that requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning." *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). The standard is "one of reasonable good judgment." *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citing *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)).

Here, the record contains Ms. Gamblin's medical records from New Mexico VA Health Care Services, dated January 1, 2000 through February 3, 2011, and covering the period of alleged onset of disability.[4]  For the period of alleged onset forward, the record includes detailed treatment notes and findings directly related to Ms. Gamblin's chronic low back pain and obesity from three treating physicians, a psychologist, two chiropractors, a physical therapist, and a registered dietitian. The record also includes interpretations and findings from several series of x-rays taken of Ms. Gamblin's spine and hips from that period. Ms. Gamblin's testimony and disability applications provided the ALJ with information about her daily living, medication use, and symptoms. Ms. Gamblin does not suggest how additional evidence would prove disability. Apparently the record was developed sufficiently enough to find that Ms. Gamblin's lumbar scoliosis and obesity were severe at step two and assess the resulting limitations, in Ms. Gamblin's favor. Therefore, the Court is not persuaded that the ALJ failed in her duty to adequately develop the record.

The Court is also not convinced the ALJ erred by failing to request additional RFC assessments from treating physicians or independent examiners, or order a consultative

---

[4] Ms. Gamblin alleges disability beginning January 1, 2008.

examination. When evidence is inconsistent or inconclusive the ALJ has discretion to develop the record by re-contacting a treating physician to seek additional evidence or clarification, requesting additional existing records or additional information, or ordering a consultative examination. 20 C.F.R. § 404.1520b. Ms. Gamblin has failed to explain how the record is inconsistent or insufficient, offering no explanation what value a consultative examination or additional RFC assessment would add to resolve the issue of disability. Further, Ms. Gamblin has pointed to no law that requires the ALJ to request additional RFC assessments from various medical sources. Ms. Gamblin has not shown ALJ Farris committed error by failing to request additional RFC assessments or order a consultative examination.

### B. Phase One: No error

At phase one, ALJ Farris found that Ms. Gamblin has the residual functional capacity to perform at least a limited range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), as long as she is not required to sit for more than one hour at a time and has to only occasionally stoop. (AR at 17). Ms. Gamblin argues that ALJ Farris committed reversible error by failing to make the correct RFC determination because the ALJ (1) did not undertake a function-by-function analysis of her ability to stand or walk, and (2) did not consider all of Ms. Gamblin's limitations resulting from her pain and obesity. (Doc. 15 at 13).

### (1)    The RFC determination was not procedurally flawed

Ms. Gamblin argues ALJ Farris erred by not engaging in a "function-by-function" RFC analysis that specifically discussed her ability to stand and walk. (Doc. 15 at 12). Ms. Gamblin alleges she is not able to do the standing and walking that "light work"

requires. Light work requires standing or walking "approximately 6 hours of an 8-hour workday," 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 SSR LEXIS 30, *14 (1983). According to Ms. Gamblin, there is no evidence in the record that ALJ Farris could rely on to find Ms. Gamblin can walk and stand for six hours in a work day aside from Dr. Green's RFC assessment. (Doc. 15 at 12).

Ms. Gamblin's argument is belied by the ALJ's decision itself. ALJ Farris noted that, with the exception of Ms. Gamblin's own testimony regarding standing and walking limitations, there is no other evidence in the record to support the existence of those limitations. (AR at 18). A claimant cannot meet her burden by merely making subjective allegations; her statements about her symptoms alone cannot establish disability. 42 U.S.C. § 423(d)(3); 20 C.F.R. §§ 404.1508, 404.1528, 416.908, 416.928. Persuasive medical evidence is necessary to establish functional limitations and support a claim of disability. *Id.* Thus, ALJ Farris could conclude the alleged limitations were not credible or consistent with Ms. Gamblin's medically-determinable impairments. (AR at 18). In the daily-living functional analysis, ALJ Farris remarked that Ms. Gamblin walks her dog and goes shopping every day. (AR at 16). The Court already pointed to examples in the record of Ms. Gamblin telling treating health professionals her daily exercise program is walking. Although the ALJ did not cite to every one of these instances, there is no requirement that an ALJ point to "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [she] can determine RFC within that category." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). Ms. Gamblin is simply incorrect that the ALJ failed to conduct an analysis of her ability to stand or walk.

As stated above, ALJ Farris granted significant weight to Dr. Green's RFC

15

opinion, (AR at 19), but proceeded to place limitations on Ms. Gamblin's ability to sit and stoop without explaining why she diverged from Dr. Green's RFC assessment. Ms. Gamblin asks the Court to hold it was reversible error for the ALJ to reject and accept Dr. Green's RFC piecemeal without explanation, citing *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007), and *Frantz v. Astrue*, 509 F.3d 1299 (10th Cir. 2007), for support. (Doc. 15 at 12). Those cases merely follow the holding of *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996), that an ALJ must discuss any uncontroverted evidence she chooses not to rely upon and significantly probative evidence that she rejects, in addition to the evidence supporting her decision. *See Haga*, 482 F.3d at 1207; *Frantz*, 509 F.3d at 1302. In fact, ALJ Farris mentioned the only evidence showing standing and walking limitations— Ms. Gamblin's own testimony— and then explained why it was not credible. None of the medical evidence conflicts with the ALJ's conclusion that Ms. Gamblin can perform light work. *See Howard*, 379 F.3d at 947. Ms. Gamblin has not identified any other uncontroverted or significantly probative evidence in the record that would support a determination of disability. The Court is not persuaded the ALJ committed reversible error by remaining silent as to why she accepted and rejected Dr. Green's RFC assessment piecemeal.[5]

## 2. The ALJ considered all of the limitations from Ms. Gamblin's pain and obesity in making the RFC analysis

Ms. Gamblin contends the ALJ failed to consider all of the limitations resulting from her pain and obesity. (Doc. 15 at 13) (citing AR at 146, 235, 243, 294, 304, 330-31, 469). Ms. Gamblin claims that the ALJ was required to describe how she considered Ms.

---

[5]  The Court does not attempt to divine the ALJ's reasoning for rejecting parts of Dr. Green's RFC assessment, but some of the medical records were made part of the record after Dr. Green gave his opinion. While it is helpful to know the ALJ's reasoning, in this instance it is unnecessary because the RFC determination is supported by substantial evidence in the record. *See Howard*, 379 F.3d at 947.

Gamblin's limitations resulting from her pain and obesity in making the RFC determination. Ms. Gamblin alleges ALJ Farris failed to adequately consider either, and is therefore entitled to remand.

### (a)  Pain

The Court first addresses Ms. Gamblin's allegation that the ALJ did not properly consider her testimony regarding the extent and effect of her pain. The ALJ must consider the credibility of the claimaint's subjective testimony about her pain, and its effect on her ability to work, as part of the RFC determination. *See* SSR 97-7p, 1996 SSR LEXIS 4, *3-4 (1996). Under the established framework Court considers the following *Luna* credibility factors:

> 1) whether claimant established a pain-producing impairment by objective medical evidence; 2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and 3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Musgrave v. Sullivan*, 966 F.3d 1371, 1375-76 (10th Cir. 1992) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 2007)). In this case, objective medical evidence in the record establishes Ms. Gamblin's pain-producing back impairment. Therefore, the ALJ was required to consider Ms. Gamblin's assertions of severe pain and decide whether she believed them. *See Branum*, 385 F.3d at 1273. The ALJ explained that Ms. Gamblin's purported symptoms could not be substantiated by any of the objective medical evidence in the record, since the x-ray studies of Ms. Gamblin's spine and hips did not reveal any acute findings or severe degenerative changes, and that Ms. Gamblin stated on several occasions that she could control her back pain with medications. (AR at 18) (citing AR at 209, 245). ALJ Farris also recited some of Ms. Gamblin's daily

17

activities, including doing household chores, cooking, driving, and shopping. (AR at 16).
The ALJ remarked that no treating or examining physician had made a finding or offered
the opinion that Ms. Gamblin is disabled, (AR at 19), or placed any limitations on Ms.
Gamblin's ability to walk, stand, sit or lift, (AR at 18). The ALJ's analysis of Ms. Gamblin's
pain symptoms was therefore sufficient. She discussed all of the relevant medical
evidence in some detail, and demonstrated she considered the *Luna* credibility factors in
assessing Ms. Gamblin's pain, including: (1) use of medication for pain control, (2)
attempts to obtain relief, (3) frequent medical contacts, (4) description of her daily
activities, and (5) credibility. *See Wall*, 561 F.3d at 1068 (citing Branum, 385 F.3d at
1273-74 for support) (holding that a similar discussion demonstrated proper
consideration of the *Luna* credibility factors). "Credibility determinations are peculiarly
the province of the finder of fact, and [the Court] will not upset such determinations when
supported by substantial evidence." *Diaz*, 898 F.2d at 777. "[T]he ALJ's credibility
findings warrant particular deference." *White v Barnhart*, 287 F.3d 903, 910 (10th Cir.
2002). Under the facts of this case, the ALJ's credibility determination is supported by
substantial evidence in the record and her analysis of Ms. Gamblin's pain was therefore
sufficient.

### (b) Obesity

Next, the Court will consider whether ALJ Farris adequately considered Ms.
Gamblin's obesity in making the RFC determination. ALJ Farris ultimately decided
that Ms. Gamblin's obesity is a severe, determinable impairment that did not
prevent her from doing past relevant work. "Obesity can cause limitation of
function." SSR 02-1p, 2002 SSR LEXIS 1, *16 (2002). The ALJ should make an

assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.*, at *16-17. When obesity is identified as a determinable impairment an ALJ should consider any functional limitations resulting from the impairment in the RFC assessment, just like she would any severe, determinable physical or mental impairment. *Id.*, at *18-19.

Here, ALJ Farris stated that she considered the effects of Ms. Gamblin's obesity when determining the RFC. (AR at 17). The general practice in the Tenth Circuit is to take an ALJ at her word when she declares that she has considered a matter. *See Brescia v. Astrue*, No. 07-4234, 287 Fed. Appx. 626, 631 (10th Cir. July 8, 2008) (unpublished) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). Nothing in Ms. Gamblin's medical records indicates a physician ever placed physical limitations on her ability to perform work-related functions due to obesity. Ms. Gamblin did not allege disability based on obesity, and she did not attribute any of her restrictions to obesity in her testimony at the hearing. Ms. Gamblin directs the Court to only one instance in the record that would indicate that her obesity limits her functioning. (Doc. 15 at 13). Ms. Gamblin's former physical therapist, Margaret Hansen, determined that Ms. Gamblin had impaired range of motion and deficits in motor function associated with her spine disorder, poor posture, and obesity. (AR at 304). The physical therapist instructed Ms. Gamblin to change her exercise program as needed to manage pain and complete a physical therapy program to help with her symptoms.[6] (AR at 304-05). The record bears no evidence that Ms. Gamblin's obesity has more than a minimal effect on her ability to do

---

[6] The record indicates that Ms. Gamblin chose not to heed the treatment plan created by the physical therapist and discontinued her physical therapy and treatment plan after only two visits. (AR at 306).

basic work activities. In fact, her weight on or around the date of alleged onset of disability was essentially the same as it had been for a number of years, including during the time she had been working. Ms. Gamblin has also neglected to allege that she is restricted by any additional obesity-related limitations not assessed by the ALJ. Therefore the Court must conclude that the ALJ adequately considered the effects and limitations resulting from Ms. Gamblin's obesity in making the RFC determination. *See Romero v. Astrue*, No. 06-6305, 242 Fed. App'x 536, 542 (10th Cir. July 24, 2007) (unpublished).

### C.  Phase Two: Error

In her final point of error, Ms. Gamblin complains the ALJ failed to make an adequate determination regarding the physical and mental demands of her past relevant work at the second phase of the *Winfrey* analysis. The Court agrees. While Ms. Gamblin still bears the ultimate burden of proving she is disabled under the regulations, the ALJ had a duty of inquiry and factual development at this phase. *Henrie*, 13 F.3d at 361. "'To make the necessary findings [at this phase], the ALJ must obtain adequate factual information about those work demands which have a bearing on the medically established limitations' included in the RFC." *Jordan v. Barnhart*, No. 06-7023, 213 Fed. App'x 643, 646 (10th Cir. Dec. 15, 2006) (unpublished) (quoting *Winfrey*, 92 F.3d at 1024). The past relevant work evidence in the record is limited to the Work History Report and Ms. Gamblin's testimony at the hearing. In her Work History Report, Plaintiff stated that in an average, eight-hour work day as a tourist counselor she walked for two hours, stood for five hours, sat for six hours, stooped for two hours, and kneeled for two hours. (AR at 137). The only relevant testimony about that job was that it entailed "[d]oing things around the center, stocking brochures, ordering brochures, doing counts

of the people that came in daily." (AR at 30). ALJ Farris made no further inquiry into the requirements of the work, either as Ms. Gamblin actually performed it or as it is customarily performed in the national economy. The ALJ did not try to resolve the conflicts apparent on the face of the Work History Report as to how many hours in an eight-hour workday Ms. Gamblin actually spent walking, standing, sitting, stooping, and kneeling. The ALJ did not discuss how she determined "tourist information counselor" work to be "light work" done sitting and standing at will, when there was meager evidence in the record to make those determinations.[7] *See Lewis v. Apfel*, No. 98-5139, 1999 U.S. App. LEXIS 8365, *5-6 (10th Cir. Apr. 30, 1999) (unpublished). ALJ Farris also failed to make findings about Ms. Gamblin's ability to meet the physical demands of her past relevant work despite her identified severe impairments. *See Henrie*, 13 F.3d at 361. Thus evidence that Ms. Gamblin could return to her past work is minimal, not substantial.

ALJ Farris did not reach step five in her opinion. Since no vocational expert testified at the hearing, the record is bereft of information whether there are a "significant number" of jobs in the national economy that the claimant has the ability to work pursuant to 20 C.F.R. §§ 404.1566 and 416.966. The Court is without enough information to resolve the matter on its own, and whether Ms. Gamblin is disabled *per se* (at step five) remains an open question. *See Squires v. Sullivan*, No. 91-1055, 1991 U.S. App. LEXIS 23696, *8-9 (10th Cir. Oct. 2, 1991) (unpublished).

**V.    Conclusion**

---

[7]  Unskilled jobs allowing a worker to sit and stand at will are rare, and in cases of unusual limitation of ability to sit or stand, a vocational expert should be consulted to clarify the implications of the occupational base. *See* SSR 83-12, 1983 SSR LEXIS 32, *9-10 (1983).

Accordingly, the Court holds that the ALJ did not properly develop the record to determine the physical and mental demands of Ms. Gamblin's past work. The omission constitutes substantial legal error necessitating a remand for further proceedings consistent with the discussion herein.

**IT IS THEREFORE ORDERED** that Ms. Gamblin's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum*, (Doc. 15), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE